# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR M. SIENZE,<br><br>    Plaintiff,<br><br>v.<br><br>MADERA COUNTY SHERIFF'S OFFICE, et al.,<br><br>    Defendants. | Case No. 1:17-cv-00736-AWI-SAB<br><br>ORDER REQUIRING PLAINTIFF TO FILE A FIRST AMENDED COMPLAINT OR NOTIFY THE COURT OF INTENT TO PROCEED ON CLAIM FOUND TO BE COGNIZABLE<br><br>(ECF No. 1)<br><br>THIRTY DAY DEADLINE |

Plaintiff Victor M. Sienze is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's complaint, filed May 30, 2017.

## I.

## SCREENING REQUIREMENT

Nothwithstanding any filing fee, the district court must perform a preliminary screening and must dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001)

1

(dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Therefore the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

**II.**

**COMPLAINT ALLEGATIONS**

Plaintiff is 72 years old, weighs 230 pounds, and is one hundred percent disabled. (Compl. 10,[1] ECF No. 1.) On May 24, 2016, Plaintiff's grandson was having seizures, hallucinations, and had quit breathing three times and Plaintiff had resuscitated him. (Compl. 10.) Plaintiff had called for an ambulance to get medical attention for his grandson. (Compl.

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

2

10.) Ambulance personnel called for sheriff's deputies although Plaintiff told them that the sheriff was not needed. (Compl. 10.)

Officer Kutz drove up in his patrol vehicle and approached Plaintiff who had his 157 pound grandson on the grass. (Compl. 10.) Plaintiff was kneeling straddled across his grandson's waist and had his grandson's wrists pinned to the grass. (Compl. 10.) After his grandson was handcuffed with his hands behind his back and his legs hobbled together, Plaintiff's grandson was left face down on the grass. (Compl. 10.) Officer Kutz asked Plaintiff if this was his grandson three times and then asked if he was adopted. (Compl. 10.) Officer Kutz then asked for a gurney to be brought closer to the grandson. (Compl. 10.) Plaintiff's grandson was picked up and laid on the gurney on his stomach. (Compl. 10.) Plaintiff's grandson was in a slightly fetal position and Officer Kutz was pressing down on his backside and low back to try to flatten him out and ambulance personnel were pulling on his legs to help flatten his grandson out on his stomach face down. (Compl. 10.)

Officer Kutz caused Plaintiff's grandson respiratory distress by placing his right knee across the side of his grandson's neck and throat while his grandson was offering no resistance. (Compl. 10.) Plaintiff expressed concern three times and told Officer Kutz that his grandson had stopped breathing three times and had to be resuscitated. (Compl. 10.) Plaintiff was deeply concerned for his grandson's life. (Compl. 10.) Plaintiff asked Officer Kutz if he was on antibiotic steroids as his reasoning seemed to be cognitively impaired. (Compl. 10.) Plaintiff told Officer Kutz that he was not going to stand by and watch Officer Kutz kill his grandson. (Compl. 10.)

Plaintiff had been trained as a first responder in the military, as well as when working in mines here in California. (Compl. 10-11.) Plaintiff knows what to do in an emergency situation and knew that Officer Kutz was virtually doing everything wrong and was not acting in the scope of his duties. (Compl. 11.) Being forced to protect his grandson, Plaintiff reached over and pushed Officer Kutz on the shoulder with enough force so that Officer Kutz would step off of Plaintiff's grandson's neck and throat. (Compl. 11.)

Plaintiff was then attacked by Officer Kutz who was joined by Sergeant Kebler. (Compl.

11.) Plaintiff told them that he was a disabled senior citizen, was on medication, and to get off of him because they were hurting him. (Compl. 11.) Plaintiff was face down on the grass and the officers were trying to force his hands behind his back. (Compl. 11.) Plaintiff told the officers that his arms did not bend behind his back and they were hurting him. (Compl. 11.)

After Plaintiff was on handcuffed on the ground with his hands behind his back, Officer Kutz went over to his grandson behind the ambulance and placed his hand on the grandson's nose and with all the weight he could muster, smeared his grandson's nose all over his face and huffed at him. (Compl. 11.) Plaintiff was placed in the car face first with his hand tightly cuffed behind his back. (Compl. 11.) An officer forcefully smashed "endorser will times into his head" damaging his head and neck. (Compl. 11.)

Plaintiff brings this action against Officer Kutz, Madera County Sheriff's Office, Deputy Roth, Sergeant Kerber, Sergeant Clark, and Officer Thomas alleging unreasonable search and seizure in violation of the Fourth Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and elder abuse in violation of 42 U.S.C. § 3058i. Plaintiff is seeking monetary damages.

## III.

## DISCUSSION

### A. Defendant Liability

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. To state a claim under section 1983, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Id.; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. This requires plaintiff to plead that the official has violated the Constitution through his own individual actions. Iqbal, 556 U.S. at 676;

OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012). In other words, to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff's complaint is devoid of any factual allegations regarding Deputy Roth, Sergeant Clark, and Officer Thomas. As there are no factual allegations to show any act or failure to act on the part of these defendants, Plaintiff has failed to state a claim against Deputy Roth, Sergeant Clark, and Officer Thomas.

Further, a local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Under Monell, 436 U.S. 658, "a municipality cannot be held liable under § 1983 *solely* because it employs a tortfeasor . . . in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. Id. at 694. "A plaintiff may also establish municipal liability by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.' " Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & County of San Francisco, 308 F.3d 968, 984–85 (9th Cir.2002)).

Plaintiff has not alleged that a policy existed that was the moving force behind his injury and the complaint includes no facts by which the Court can reasonably infer that any policy of the Madera County Sheriff's Department caused a violation of his federal rights. Plaintiff has failed to state a claim against the Madera County Sheriff's Department.

**B.    Eighth Amendment**

Plaintiff brings this action alleging violation of his rights under the Eighth Amendment. The Eighth Amendment protects prisoners from cruel and unusual punishment which includes

5

not only from inhumane methods of punishment but also inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). The Eighth Amendment is violated where prison officials deprived an inmate of something 'sufficiently serious,' and the deprivation occurred with deliberate indifference to the inmate's health or safety." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted).

Plaintiff's claims in this action do not arise under the Eighth Amendment as he was not a prisoner at the time the incidents alleged in the complaint took place.

### C. Fourth Amendment

The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . .' " Terry v. Ohio, 392 U.S. 1, 8 (1968). The Constitution does not forbid all searches and seizures, but unreasonable searches and seizures. Terry, 392 U.S. at 9. While Plaintiff alleges an unreasonable search and seizure in violation of the Fourth Amendment, he does not articulate the specific bases of his claim. The Court therefore considers the possible Fourth Amendment claims that arise out of the allegations in the complaint.

1. <u>Entry onto Property</u>

Plaintiff alleges that ambulance personnel called for sheriff's deputies although Plaintiff told them that the sheriff was not needed. (Compl. 10.) "[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Michigan v. Tyler, 436 U.S. 499, 506 (1978). "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." Mincey v. Arizona, 437 U.S. 385, 392 (1978). "The Ninth Circuit has adopted a two-part test for determining whether the emergency exception applies, which asks 'whether: (1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." Silva v. City of San Leandro, 744

F. Supp. 2d 1036, 1050 (N.D. Cal. 2010) (quoting U.S. v. Snipe, 515 F.3d 947, 951 (9th Cir.2008)).

Here, Plaintiff is vague as to the reason that he medical personnel were needed for his grandson on May 24, 2017, and whether the police were summoned contemporaneously to medical personnel responding or after medical personnel arrived on the scene and evaluated his grandson. The Court does note that Plaintiff includes a picture of a young man and states he was sent to Provo, Utah for drug rehab. (Compl. at 27.) Given the allegations in the complaint, that Plaintiff and his grandson were on the grass, it would appear that the incident occurred in the yard of Plaintiff's home. Plaintiff alleges that he was on top of his grandson controlling him and the police were summoned by medical personnel. In these circumstances, the Court cannot reasonably infer that Officer Kutz illegally entered onto Plaintiff's property in violation of the Fourth Amendment.

2. Excessive force

Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen invoke the protections of the Fourth Amendment and are governed by its "reasonableness" standard. Graham v. Connor, 490 U.S. at 394. The reasonableness inquiry in excessive force cases is whether the officer's actions were " 'objectively reasonable' in light of the facts and circumstances confronting" him. Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005).

Determining whether the force used to effect a particular seizure is reasonable, "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Ames v. King Cty., Washington, 846 F.3d 340, 348 (9th Cir. 2017) (quoting Graham, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Wilkinson v. Torres, 610 F.3d 546, 550 (9th Cir. 2010) (quoting Graham, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often

forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

In making an arrest, the Fourth Amendment requires that police officers use only the amount of force that is objectively reasonable in light of the circumstances facing them and neither tackling nor punching a suspect to arrest them necessarily constitutes excessive force. Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007). The question is whether the amount of force used was "objectively reasonable in light of the facts and circumstances confronting the officers. Blankenhorn, 485 F.3d at 477.

At the pleading stage, the Court finds that Plaintiff's allegations are sufficient to state a claim that Officer Kutz and Sergeant Kebler use of force against him was excessive.

Plaintiff also alleges that an unidentified officer forcefully smashed "endorser will times into his head" damaging his head and neck. (Compl. 11.) However, this allegation is vague and confusing. If Plaintiff seeks to bring a claim against this officer he must clarify the allegation in an amended complaint. As alleged, the Court finds that Plaintiff has not stated a claim against this unidentified officer.

3. Unlawful arrest

It is well established that a claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, if the arrest was made without probable cause or other justification. Dubner v. City & Cty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001); Rosenbaum v. Washoe Cty., 663 F.3d 1071, 1076 (9th Cir. 2011). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." Dubner, 266 F.3d at 966.

Plaintiff's allegation that he made no aggressive action toward Officer Kutz is contradicted by his statement that he pushed Officer Kutz with enough force to cause him to move away from his grandson. However, Plaintiff alleges that at the time that he pushed Officer Kutz, the officer was kneeling on his grandson's throat causing him to be unable to breath.

Plaintiff's complaint fails to state the reason for his arrest. The Court notes that at the time that the officer's arrived on the scene, it appears that they found Plaintiff on top of his grandson and there had obviously been some type of incident on the premises requiring emergency services to be summoned. As the charge upon which Plaintiff was arrested is unclear, the Court finds that the allegations in the complaint are insufficient for the Court to reasonably infer that Plaintiff was arrested without probable cause.

### D. 42 U.S.C. § 3058i, Prevention of Elder Abuse, Neglect, and Exploitation

Plaintiff also alleges a violation of 42 U.S.C. § 3058i which provides that in order to receive funds for vulnerable elder rights protection activities, state agencies must develop and enhance programs to address elder abuse, neglect, and exploitation. 42 U.S.C. § 3058i(a). The question of whether a statute creates a private right of action is one of statutory construction and the analysis begins with the language of the statute itself. Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). In interpreting the statute, the judicial task is to determine whether the statute displays an intent to create, not just a private right, but a private remedy. Alexander v. Sandoval, 532 U.S. 275, 286 (2001). Without such intent no cause of action exists and courts may not create one. Alexander, 532 U.S. at 286.

Where the statute does not explicitly provide for a private cause of action, the Supreme Court has identified four factors which are the criteria by which an implied intent can be discerned. California v. Sierra Club, 451 U.S. 287, 293 (1981).

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' ...—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

Sierra Club, 451 U.S. at 293 (quoting Cort v. Ash, 422 U.S. 66, 78 (1975)). The ultimate issue is whether Congress intended to create a private right of action, Sierra Club, 451 U.S. at 293, and where the plain language of the statute weighs against implying a private remedy, the court should not find a private right of action implicit within the statute, Touche Ross & Co., 442 U.S.

at 471.

Here, the statute is aimed at prevention of elder abuse, neglect, and exploitation and the funds provided by the statute are to be used to "to develop, strengthen, and carry out programs for the prevention, detection, assessment, and treatment of, intervention in, investigation of, and response to elder abuse, neglect, and exploitation." 42 U.S.C. § 3058i(b). Nothing in the plain language of the statute creates a private cause of action, therefore the Court considers whether there is any indication that Congress implied a private cause of action. The court must consider "the entire statutory scheme provided by Congress in determining if a private cause of action exists, noting that analogous provisions expressly providing for private causes of action can imply congressional intent not to create an implied cause of action." In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1231 (9th Cir. 2008) (citations omitted).

The first consideration is whether the plaintiff is within the class for whose benefit the statute was enacted. It is arguable that Plaintiff falls within the class as he is disabled and 72 years old and the statute is directed to vulnerable elder rights protection activities. The Court finds that Plaintiff would fall within the class of individuals the statute was intended to benefit.

Second, the Court considers whether the statute itself indicates legislative intent for a private right of action. In making this analysis, the Court looks "for the presence of any "rights-creating language" that might imply Congress intended to confer" upon Plaintiff the right to sue for a violation of the statute. Northstar Fin. Advisors, Inc. v. Schwab Investments, 615 F.3d 1106, 1115 (9th Cir. 2010). Nothing in the text of section 3058i indicates an intent to create a private right of action. Section 3058i provides for the establishment of funds and directs how they are to be used by state agencies. 42 U.S.C. § 3058i(a)(b)(c)(d)(e). The section also provides for reporting and accountability measures. 42 U.S.C. § 3058i(g)(h)(i). Therefore, the Court next considers the statutory scheme as a whole.

The statute requires the state to establish an ombudsman program and to have legal counsel available so the office can pursue administrative, legal, and other appropriate remedies on behalf of individuals who reside in long term care facilities. 42 U.S.C. §§ 3058f(6), 3058g(g). The statute further provides for a state legal assistance developer to ensure state capacity to assist

securing the legal rights of older individuals. 42 U.S.C. § 3058j. These sections indicate that any right of enforcement is left to the state, not to individuals.

The language of the statute does not imply a private right of action, but indicates a general intent to ensure that there are resources and personnel available at the state level to protect the interests of vulnerable elder adults. The statute here focuses on the manner in which the state is to use the public funds and reveals no congressional intent to create a private right of action. Alexander, 532 U.S. at 289. The finding that the statute does not demonstrate an intent to create a private right of action is determinative. See In re Digimarc Corp. Derivative Litig., 549 F.3d at 1233 (even if the plaintiff is within the class who the statute was intended to benefit, it is not enough to offset a clear intent not to create a private cause of action).

The Court finds that Congress did not intend to create a private right of action under section 3058i. Plaintiff does not have a federal cause of action for elder abuse under 42 U.S.C. § 3058i.

### E. Standing to Assert Rights of Third Party

Plaintiff alleges that Officer Kutz was in violation of his grandson's constitutional right to life and safety. To the extent that Plaintiff is attempting to bring this action to assert a violation of the constitutional rights of his grandson, he does not have standing to do so.

Standing raises both constitutional and prudential concerns incident to the federal court's exercise of jurisdiction. Coalition of Clergy, Lawyers, and Professionals v. Bush, 310 F.3d 1153, 1157 (9th Cir. 2002). A prudential principle of standing is that normally a plaintiff must assert his own legal rights rather than those of third parties. Oregon v. Legal Services Corp., 552 F.3d 965, 971 (9th Cir. 2009); Fleck and Associates, Inc. v. Phoenix, 471 F.3d 1100, 1104 (9th Cir. 2006.) In some circumstances a litigant may seek relief for third persons, however, the litigant must demonstrate 1) the litigant suffered an injury in fact; 2) that there is a close relationship between the litigant and the individual who possesses the right that the litigant is asserting; and 3) there is a hindrance to the individual's ability to assert his own rights. Coalition of Clergy, Lawyers, and Professionals, 310 F.3d at 1163; Fleck and Associates, Inc., 471 F.3d at 1105 n.3; McCollum v. California Dep't of Corrections and Rehabilitation, 647 F.3d 870, 878

(9th Cir. 2011).

### F. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiff shall be granted an opportunity to file an amended complaint to cure the deficiencies identified in his claims if he so desires. If Plaintiff opts to amend, he is advised that any amended complaint must identify the specific claims that he seeks to pursue in this action.

## IV.

## CONCLUSION AND ORDER

Plaintiff's complaint states a cognizable claim for damages against Officer Kutz and Sergeant Kebler for excessive use of force in violation of the Fourth Amendment. Plaintiff has not sufficiently alleged facts to state a cognizable claim against any other named Defendant. The Court will provide Plaintiff with the opportunity to file an amended complaint to cure the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the cognizable Fourth Amendment claim against Officer Kutz and Sergeant Kebler, Plaintiff may so notify the Court in writing, and the Court will dismiss the other claims and Defendants, and will forward Plaintiff two (2) summonses and two (2) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th

Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. Within thirty (30) days from the date of service of this order, Plaintiff must either:
    a. File an amended complaint curing the deficiencies identified by the Court in this order, or
    b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Officer Kutz and Sergeant Kebler for excessive use of force in violation of the Fourth Amendment; and

///

///

13

2. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated: **June 5, 2017**

_____
UNITED STATES MAGISTRATE JUDGE