# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR M. SIENZE,<br><br>Plaintiff,<br><br>v.<br><br>MADERA COUNTY SHERIFF'S OFFICE, et al.,<br><br>Defendants. | Case No. 1:17-cv-00736-AWI-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 5)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Victor M. Sienze is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On June 5, 2017, Plaintiff's complaint was screened and an order issued requiring Plaintiff to notify the Court if he wished to proceed on the claims found to be cognizable or file a first amended complaint. Currently before the Court is Plaintiff's first amended complaint, filed June 30, 2017.

**I.**

**SCREENING REQUIREMENT**

Notwithstanding any filing fee, the district court must perform a preliminary screening and must dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v.

1 Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners); Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of in forma pauperis proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss in forma pauperis complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the pro se complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Therefore the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is 5 feet 9 inches tall, weighs 230 pounds, and is 100 percent disabled. (First Am. Compl. ("FAC") 3,4,[1] ECF No. 5.) Plaintiff's grandson was dropped off at his house by the

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

2

grandson's father and some friends. (FAC 2.) The grandson was having seizures, hallucinating, and stopped breathing three times requiring Plaintiff to resuscitate him each time. (FAC 2.) Plaintiff suspected drugs but had no way of knowing. (FAC 2.) Plaintiff was unable to take care of his grandson and drive him to the hospital by himself so he called for an ambulance to get medical attention for his grandson. (FAC 2.)

After the ambulance arrived, Plaintiff helped medical personnel place his grandson on a gurney and the grandson was strapped down with two large straps. (FAC 2.) As the emergency medical personnel placed his grandson in the ambulance, Plaintiff advised them not to try to give his grandson an injection because he was hallucinating and not completely secured to the railing. (FAC 2.) The medical personnel refused to heed Plaintiff's warning and gave his grandson an injection after which they were not able to control him. (FAC 2.) Plaintiff saw the ambulance pull over to the curb and turned his car around to pull up behind them and see what the problem was. (FAC 2-3.)

The ambulance driver asked Plaintiff to come into the vehicle to assist them in restraining his grandson. (FAC 3.) Plaintiff was told to open the back door and get in the ambulance which he did. (FAC 3.) As he entered the ambulance, Plaintiff put a hand on his grandson's shoulder, bringing his left arm down to the rail and told the driver to secure it. (FAC 3.) The driver refused and told Plaintiff he was calling the Sheriff's Department. (FAC 3.) Plaintiff told the driver that he did not need the sheriff, he needed emergency medical assistance at the hospital. (FAC 3.) The driver called the Sheriff's Department anyway. (FAC 3.) Before the deputies arrived, Plaintiff's grandson was able to get out from under the two large straps securing him on the gurney and was walking around Plaintiff's side yard yelling and hallucinating. (FAC 3.) Plaintiff took his grandson to the ground so that he would not wander off. (FAC 3.)

When deputies arrived, Plaintiff had his grandson lying on his back and was kneeling over him straddling his waist with both his wrists pinned to the grass. (FAC 3.) Plaintiff was having no trouble keeping his grandson down as his grandson is only 5 feet 11 inches and weighs 157 pounds. (FAC 3.)

Deputy Kutz drove up to Plaintiff's side yard and quickly walked to where Plaintiff was

restraining his grandson. (FAC 3.) Deputy Kutz placed handcuffs on his grandson's right wrist, and Plaintiff helped Deputy Kutz roll his grandson over and place handcuffs on his grandson's other wrist. (FAC 3.) Deputy Kutz asked Plaintiff if this was his grandson three times and Plaintiff answered affirmatively each time. (FAC 3.) The third time, Deputy Kutz asked Plaintiff is his grandson was adopted or something. (FAC 3.) Plaintiff responded that it did not matter and that his grandson needed medical assistance. (FAC 3.)

Deputy Kutz then summoned the gurney and medical personnel came and his grandson was placed on the gurney face down. (FAC 3.) Deputy Kutz was pressing down on his grandson's backside and low back to try to flatten him out and ambulance personnel were pulling on his legs to help flatten his grandson out on his stomach face down. (FAC 3.) Plaintiff asked Deputy Kutz if his grandson should not be laying on his back not his stomach so he could be strapped to the gurney, but got no response. (FAC 3.) After his grandson was on his stomach, his head was turned to the left so he could breathe. (FAC 3.) Deputy Kutz placed his right knee on the side of Plaintiff's grandson's neck and throat and his grandson showed signs of breathing distress. (FAC 3.) Plaintiff "quickly and strongly" advised Deputy Kutz that prior to his arrival Plaintiff had to resuscitate his grandson three times because his grandson had stopped breathing and that Deputy Kutz was placing his grandson's life in jeopardy because he was struggling to breathe. (FAC 3.) Plaintiff repeated this advisement three times. (FAC 3.) When Deputy Kutz did not respond, Plaintiff asked Deputy Kutz if he was on antibiotic steroids as his reasoning seemed to be cognitively impaired. (FAC 3-4.) Deputy Kutz told Plaintiff to step back and Plaintiff responded that he was not going to stand by and watch Deputy Kutz kill his grandson. (FAC 4.) Plaintiff reached over and pushed Deputy Kutz right shoulder with enough force to push him back off his grandson's neck and throat so his grandson could breathe. (FAC 4.)

Plaintiff was then attacked by Deputy Kutz who was joined by Sergeant Kerber. (FAC 4.) The officers had Plaintiff face down on the grass trying to force his hands behind his back. (FAC 4.) Plaintiff told the officers that he was 100 percent disabled and his arms did not bend behind his back and they were hurting him. (FAC 4.) He told the officers to handcuff him in front so that he would not be injured. (FAC 4.) Deputy Kutz would not stop until both of

4

Plaintiff's arms were forced behind his back and he was handcuffed tearing his rotator cuffs in both shoulders. (FAC 4.)

Plaintiff told the officers that it would take more than two of them to carry him to the car. (FAC 7.) After Plaintiff was on handcuffed on the ground with his hands behind his back, Deputy Kutz, Sergeant Kerber, Sergeant Clark, Deputy Roth, and Sergeant Thomas picked Plaintiff up and carried him and put him in the back of the police car feet first causing him further pain. (FAC 4-5.) Deputy Kutz smashed Plaintiff's head into the car door multiple times damaging his neck. (FAC 5.)

After Plaintiff was handcuffed and lying on the ground, Deputy Kutz went over to Plaintiff's grandson, put his hand on the grandson's nose and with all the weight he could muster smeared his grandson's nose over all over his face. (FAC 6.)

Plaintiff was trained in emergency first aid in the military and as a first aid responder for the Bureau of Mines and Safety. (FAC 5.) Plaintiff knows how to respond to emergency situations and states that Deputy Kutz did everything wrong and not in accordance with his duties. (FAC 5.) Plaintiff has also served as a legal court appointed conservator and guardian and is sure that Deputy Kutz was violating his protocol and duties by his actions. (FAC 5.)

Plaintiff contends that Deputy Kutz was clearly in violation of his grandson's constitutional right to life and safety and violated Plaintiff's right to defend the safety of his helpless grandson. (FAC 5.) Plaintiff also contends that Deputy Kutz violated his right to be free from the use of excessive force. (FAC 5-6.)

Plaintiff brings this action against Deputies Kutz and Roth, and Sergeants Kerber, Clark, and Thomas. Plaintiff contends that Sergeant Kerber violated his right to due process by refusing to issue a citizen's arrest against Deputy Kutz when Plaintiff requested this three times due to the false charges, false arrest, and abusive actions of Deputy Kutz. (FAC 6.) Plaintiff alleges that Deputy Kutz violated his rights under the Eighth Amendment to be free of cruel and unusual punishment. (FAC 6.)

///

///

5

# III.

# DISCUSSION

## A. Fourth Amendment

Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen invoke the protections of the Fourth Amendment and are governed by its "reasonableness" standard. Graham v. Connor, 490 U.S. at 394. The reasonableness inquiry in excessive force cases is whether the officer's actions were " 'objectively reasonable' in light of the facts and circumstances confronting" him." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005).

Determining whether the force used to effect a particular seizure is reasonable, "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Ames v. King Cty., Washington, 846 F.3d 340, 348 (9th Cir. 2017) (quoting Graham, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Wilkinson v. Torres, 610 F.3d 546, 550 (9th Cir. 2010) (quoting Graham, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

In making an arrest, the Fourth Amendment requires that police officers use only the amount of force that is objectively reasonable in light of the circumstances facing them and neither tackling nor punching a suspect to arrest them necessarily constitutes excessive force. Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007). The question is whether the amount of force used was "objectively reasonable in light of the facts and circumstances confronting the officers. Blankenhorn, 485 F.3d at 477.

At the pleading stage, the Court finds that Plaintiff's allegations are sufficient to state a

claim that Deputy Kutz and Sergeant Kerber use of force against him was excessive when they tackled him and handcuffed him after he pushed Deputy Kutz. Further, Plaintiff's allegation that while placing Plaintiff in the car Deputy Kutz smashed Plaintiff's head into the side of the car several times is sufficient to state an excessive force claim.

Plaintiff alleges that excessive force was used by Sergeant Clark, Deputy Roth, and Deputy Thomas who picked Plaintiff up and carried him and put him in the back of the police car feet first. However, Plaintiff also told the officers that more than two officers would be needed to carry him to the car. While Plaintiff now states that the reason he told the officers that more than two officers would be needed to put him in the car was because of his size, the factual allegations in the complaint are insufficient for the Court to infer that these officers used excessive force by carrying Plaintiff and placing him feet first into the car. Plaintiff has failed to state a cognizable claim against Sergeant Clark, Deputy Roth, and Officer Thomas for violation of the Fourth Amendment.

The Court recommends that Defendants Clark, Roth, and Thomas be dismissed from this action for failure to state a claim; and this action proceed against Defendants Kutz and Kerber for excessive force in violation of the Fourth Amendment.

**B.     Eighth Amendment**

Plaintiff raises claims alleging violation of his rights under the Eighth Amendment. However, as Plaintiff was previously advised, the Eighth Amendment protects prisoners from cruel and unusual punishment which includes not only inhumane methods of punishment but also inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). The Eighth Amendment is violated where prison officials deprived an inmate of something 'sufficiently serious,' and the deprivation occurred with deliberate indifference to the inmate's health or safety." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted).

Plaintiff's claims in this action do not arise under the Eighth Amendment as he was not a prisoner at the time the incidents alleged in the complaint took place. Plaintiff cannot state a

claim under the Eighth Amendment; and the Court recommends that Plaintiff's Eighth Amendment claims be dismissed without leave to amend.

**C.    Due Process**

Plaintiff contends that Sergeant Kerber violated his due process rights by failing to issue a citizen's arrest of Deputy Kutz at his request. The Due Process Clause protects against the deprivation of life, liberty, or property without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). To state a due process claim, a litigant must allege that he was deprived of a liberty or property interest protected by the due process clause and that the procedures attendant upon that deprivation were not constitutionally sufficient. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). Where a person claims a denial of due process the court must inquire into the nature of the interest claimed. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979). A liberty interest may arise under the guarantees implicit in the Fourteenth Amendment or may arise from an expectation or interest that is created by state laws or policies. Wilkinson, 545 U.S. 221. Here, Plaintiff is asserting an interest in having Deputy Kutz arrested.

Clearly, this may invoke a liberty interest in Deputy Kutz if he was arrested, but the Court does not find that a person seeking to make a citizen's arrest has a liberty interest in having someone else arrested. Therefore, if any interest arises under the Due Process Clause it would have to be a property interest. " 'To have a property interest . . .a person clearly must have more than an abstract need or desire' for the thing in question, '[h]e must, instead, have a legitimate claim of entitlement to it. . . . It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.' " Newman v. Sathyavaglswaran, 287 F.3d 786, 795 (9th Cir. 2002) (quoting Roth, 408 U.S. at 577).

California law provides that a private person may arrest another for a public offence committed or attempted in his presence. Cal. Pen. Code § 837. A private citizen's authority to make a citizen's arrest is more limited than that of a law enforcement officer. Hamburg v. Wal-

Mart Stores, Inc., 116 Cal.App.4th 497, 512 (2004), as modified (Mar. 3, 2004). "A private citizen [ ] may arrest another for a misdemeanor only when the offense has actually been committed or attempted in his presence." Hamburg, 116 Cal.App.4th at 512 (quoting Cervantez v. J.C. Penney Co., 24 Cal.3d 579, 587 (1979)). " '[P]resence' is not mere physical proximity but is determined by whether the offense is 'apparent to the senses' of the person who makes the arrest.' " Hamburg, 116 Cal.App.4th at 512.

In Meyers v. Redwood City, 400 F.3d 765 (9th Cir. 2005), the Ninth Circuit addressed California's citizen's arrest statute.

> A private person making a citizen's arrest need not physically take the suspect into custody, but may delegate that responsibility to an officer, and the act of arrest "may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect." Padilla v. Meese, 184 Cal.App.3d 1022, 1030–31, 229 Cal.Rptr. 310 (1986). California law gives the officer the choice of making the citizen's arrest or not, but there are powerful incentives to make the arrest. On the one hand, an officer who makes an arrest pursuant to a citizen's complaint is not subject to liability for false arrest or false imprisonment. CAL. PENAL CODE § 847(b)(3). On the other hand, an officer does not have to effect the arrest if he or she "is satisfied that there are insufficient grounds for making a criminal complaint[.]" CAL. PENAL CODE § 849(b)(1). However, there is a catch: If it turns out that there were grounds for the complaint and the officer failed to take the suspect into custody, the officer is subject to fines or imprisonment. CAL. PENAL CODE § 142(a). The California courts have held that even though an officer may decline to take a suspect into custody under Section 849 if he finds no grounds for the complaint, an officer cannot be sued civilly if he makes the arrest and, it turns out, there were no grounds for the citizen's arrest. Kinney v. County of Contra Costa, 8 Cal.App.3d 761, 768–69, 87 Cal.Rptr. 638 (Cal.Ct.App.1970); Shakespeare v. City of Pasadena, 230 Cal.App.2d 375, 382, 40 Cal.Rptr. 863 (Cal.Ct.App.1964).

Meyers, 400 F.3d at 772–73. While California law provides powerful incentives for an officer to arrest a suspect when requested by a citizen, the officer is not required to make an arrest. Therefore, the Court finds that Plaintiff cannot claim an interest in having Deputy Kutz arrested that would implicate the Due Process Clause.

Plaintiff has not identified a protected interest to state a claim against Sergeant Kerber in this instance. The Court recommends that Plaintiff's due process claim be dismissed without leave to amend.

///

///

### D.      Right to Defense of Another

Plaintiff also alleges that Defendant Kutz violated his right to defend his helpless grandson. While Plaintiff could raise defense of another in response to the charges brought against Plaintiff in his criminal case, Church of Scientology v. Armstrong, 232 Cal.App.3d 1060, 1072 (1991), Plaintiff does not have a right under the constitution to defend a third person. See Rowe v. DeBruyn, 17 F.3d 1047, 1052 (7th Cir. 1994) (no fundamental right under the due process clause to self-defense); Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (no fundamental right under the due process clause to use violence to defend a third party); White v. Arn, 788 F.2d 338, 347 (6th Cir. 1986) (rejecting a defendant's argument that there is a constitutional right to self-defense that arises under the Eighth, Ninth, and Fourteenth Amendments); Fields v. Harris, 675 F.2d 219, 220 (8th Cir. 1982) ("Self-defense is an important common-law principle, but not a substantive right conferred directly by the federal Constitution."). Plaintiff cannot state a claim based upon a right to defend a third party.

### E.      Plaintiff Lacks Standing to Assert His Grandson's Constitutional Claims

Finally, Plaintiff contends that Deputy Kutz violated his grandson's right to life and safety. As Plaintiff was previously advised in the prior screening order, he does not have standing to assert the rights of his grandson. Standing raises both constitutional and prudential concerns incident to the federal court's exercise of jurisdiction. Coalition of Clergy, Lawyers, and Professionals v. Bush, 310 F.3d 1153, 1157 (9th Cir. 2002). A prudential principle of standing is that normally a plaintiff must assert his own legal rights rather than those of third parties. Oregon v. Legal Services Corp., 552 F.3d 965, 971 (9th Cir. 2009); Fleck and Associates, Inc. v. Phoenix, 471 F.3d 1100, 1104 (9th Cir. 2006). In some circumstances a litigant may seek relief for third persons, however, the litigant must demonstrate 1) the litigant suffered an injury in fact; 2) that there is a close relationship between the litigant and the individual who possesses the right that the litigant is asserting; and 3) there is a hindrance to the individual's ability to assert his own rights. Coalition of Clergy, Lawyers, and Professionals, 310 F.3d at 1163; Fleck and Associates, Inc., 471 F.3d at 1105 n.3; McCollum v. California Dep't of Corrections and Rehabilitation, 647 F.3d 870, 878 (9th Cir. 2011).

While Plaintiff alleges actions by Defendant Kutz that could be considered the use excessive force against his grandson, and arguably could show that a close relationship exists, the complaint contains no allegations that Plaintiff's grandson is unable to assert his own rights. Plaintiff has failed to allege facts that would provide him with third party standing to assert the rights of his grandson.

Further, a plaintiff, who is not an attorney, may not represent anyone but himself in court. Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997); C. E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir. 1987). As Plaintiff is not an attorney he cannot represent the interests of his grandson in this action. The Court recommends that Plaintiff's grandson's constitutional claims be dismissed from this action.

### F. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In determining whether to grant leave to amend, the court considers five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).

Plaintiff has been provided with the legal standards that apply to his claims in this action and provided with an opportunity to file an amended complaint to state his claims in this action. Plaintiff's amended complaint fails to cure the deficiencies identified in the June 5, 2017 screening order. The Court finds that it would be futile to allow Plaintiff further opportunity to file an amended complaint. The Court recommends that no further leave to amend be granted.

## III.

## CONCLUSION AND RECOMMENDATION

Plaintiff's complaint states a cognizable claim against Defendants Kutz and Kerber for excessive force in violation of the Eighth Amendment, but fails to state any other cognizable claims. Further, Plaintiff has been provided an opportunity to file an amended complaint to cure the deficiencies in his prior complaint with guidance from the Court. The Court finds that it would be futile to allow Plaintiff further leave to amend his complaint.

Based on the foregoing, IT IS HEREBY RECOMMENDED that

1. This action proceed against Defendants Kutz and Kerber for the use of excessive force in violation of the Fourth Amendment;
2. Defendants Clark, Roth, and Thomas be dismissed from this action for Plaintiff's failure to state a cognizable claim against them; and
3. All remaining claims in the first amended complaint be dismissed for failure to state a claim.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 12, 2017**

UNITED STATES MAGISTRATE JUDGE