1

2

3

4

5

**UNITED STATES DISTRICT COURT**

6

**EASTERN DISTRICT OF CALIFORNIA**

7

8    **VICTOR M. SIENZE,**

9                              **Plaintiff**

10                        **v.**

11   **SHERIFF'S DEPUTY MATTHEW J.**
     **KUTZ and SHERIFF'S SERGEANT**
12   **DANIEL N. KERBER,**

13                              **Defendants**

14

**CASE NO. 1:17-CV-0736 AWI SAB**

**ORDER RE: MOTION FOR SUMMARY JUDGMENT, MOTION FOR LEAVE TO AMEND, AND MOTION TO DISMISS**

**(Docs. 27, 52, and 56)**

15                              **I. Background**

16          Plaintiff Victor Sienze lives in Madera, CA.  On May 24, 2016, Sienze called for an

17   ambulance to have his grandson, Victor Sienze III, transported to a hospital.  Emergency Medical

18   Technicians Anthony Prieto and Sabrina Munoz arrived.  Having difficulty with the transport, the

19   EMTs called the Madera County Sheriff's Office for assistance.  Defendant Officer Matthew Kutz

20   was among the several police officers to arrive at the scene.  Sienze objected to the manner in

21   which Officer Kutz was handling his Grandson and pushed Officer Kutz.  The police officers

22   tackled and handcuffed Sienze.  Defendant Officer Dan Kerber arrived on the scene.  Sienze was

23   arrested for obstructing a police officer in the course of their duty.  Sienze was uncooperative.

24   The police officers physically subdued him, picked him up, and put him in the back of a patrol car.

25   In the process, Officers Kutz and Kerber forced Sienze face first onto the ground and Officer Kutz

26   struck Sienze's head with the car door.

27          Sienze filed suit against the Madera County Sheriff's Office, Officers Kutz, Kerber, Ian

28   Roth, Jason Clark, and Michael Thomas for violating his civil rights under 42. U.S.C. § 1983.

Doc. 1.  The operative complaint is the First Amended Complaint, which dropped the claims against the Madera County Sheriff's Office.  Doc. 5.  Sienze is pro se and in forma pauperis.  In reviewing the First Amended Complaint, Magistrate Judge Stanley Boone recommended dismissing Officers Roth, Clark, and Thomas from the case as well as limiting claims against Officers Kutz and Kerber to excessive force.  Doc. 6.  The Findings and Recommendations were adopted in full. Doc. 7.

Defendants have filed a motion for summary judgment.  Doc. 27.  Sienze has opposed the motion.  Doc. 39.  The form of Sienze's opposition was not proper.  Sienze was granted leave to make additional filings in opposition to the summary judgment motion.  Doc. 44.  Sienze complied with the request and also filed a motion for leave to file a Second Amended Complaint.  Doc. 53.  Defendants oppose the motion and filed a motion to dismiss the proposed complaint.  Doc. 56.

## II. Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Juell v. Forest Pharms., Inc., 456 F.Supp.2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated ...by evidence that is 'merely colorable' or 'is not significantly

probative.'" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Hardage v. CBS Broad. Inc.</u>, 427 F.3d 1177, 1183 (9th Cir. 2006). Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See <u>Southern Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003). If the non-moving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies</u>, 210 F.3d 1099, 1103 (9th Cir. 2000).

**B. Summary Judgment Facts**

From the evidence presented by the parties and taking all disputes and reasonable inferences in favor of Sienze, the non moving party, the facts at summary judgment relevant to the remaining claims of excessive force are as follows.

On May 24, 2016, EMTs Prieto and Munoz arrived at Sienze's residence to transport the Grandson to a hospital. Having difficulty securing him in their ambulance, they contact law enforcement for assistance. Officer Kutz was the first to arrive. Doc. 30, Defendants' Fact 10; Doc. 46, Plaintiff's Response to Fact 20. On Sienze's lawn, Officer Kutz handcuffed the Grandson with Sienze's and the EMTs' help. Doc. 37, Sienze Deposition, 85:2-21; Doc. 47, Sienze Declaration, 6:17-19. Officer Kutz tried to secure the Grandson face down and flat on a gurney but the Grandson was in a ball with his knees pulled up. Doc. 37, Sienze Deposition, 86:10-17 and 87:5-88:8; Doc. 47, Sienze Declaration, 7:13-20. Officer Kutz and the EMTs tried to force the Grandson to flatten out his body. Doc. 37, Sienze Deposition, 88:18-25. In the process of doing so, Officer Kutz placed his knee on the Grandson's back or neck. Doc. 37, Sienze Deposition, 92:3-8; Doc. 47, Sienze Declaration, 8:3-4; Doc. 33, Munoz Declaration, 3:9-10; Doc. 32, Prieto Declaration, 3:17-18. Sienze told Officer Kutz that he was suffocating the Grandson. Doc. 47, Sienze Declaration, 8:21-22 and 9:4-6; Doc. 33, Munoz Declaration, 3:11-12; Doc. 32, Prieto Declaration, 3:19-20. Officer Kutz told Sienze to step back. Doc. 37, Sienze Deposition,

92:10; Doc. 47, Sienze Declaration, 9:7-8; Doc. 33, Munoz Declaration, 3:17-18; Doc. 32, Prieto Declaration, 3:25-26. Officer Kutz used both hands to pushed Sienze away. Doc. 37, Sienze Deposition, 125:18-19; Doc. 47, Sienze Declaration, 9:8-9. Sienze told Officer Kutz that he was not going to stand by while his Grandson was being killed. Doc. 37, Sienze Deposition, 92:10-12; Doc. 47, Sienze Declaration, 9:8-10. Sienze pushed Officer Kutz off his Grandson. Doc. 30, Defendants' Fact 20; Doc. 46, Plaintiff's Response to Fact 20; Doc. 37, Sienze Deposition, 92:12-15 and 94:23-95:3; Doc. 47, Sienze Declaration, 9:9-11. Sienze then laid down on top of his Grandson to block Officer Kutz from access. Doc. 37, Sienze Deposition, 95:12-13; Doc. 47, Sienze Declaration, 9:11-12.

The facts concerning the handcuffing are muddled. By that time, Officer Roth had arrived on the scene. Doc. 33, Munoz Declaration, 3:23-26. Defendants present the declarations of four individuals, each of which only briefly states that Officers Kutz and Roth handcuffed Sienze who resisted the handcuffing. Doc. 38, Stephen Waltz Declaration, 3:3-6; Doc. 35, Benita Waltz Declaration, 3:8-10; Doc. 32, Prieto Declaration, 4:5-6; Doc. 33, Munoz Declaration, 24-26. Officer Kutz has stated "I walked around to the back side of the gurney and tried to get the defendant's arms off the gurney, but I struggled to do so. And about that time, Deputy Sheriff Roth arrived and assisted me getting his hands off the gurney into the handcuffs." Doc. 52, Kutz Testimony, 12:12-16. Of this interaction, Sienze stated in his deposition that "they pounced on me, jumped on me and forced me down to the ground and abused me....I was injured, abused, assaulted and forcibly handcuffed behind my back when I told them that I was disabled, my arms didn't go behind my back." Doc. 37, Sienze Deposition, 96:2-3 and 97:3-6. He also stated in his declaration that "Officer Kutz then proceeded to attack me and tr[ied] to keep me from protecting my grandson[;] all I was trying to do was to protect my grandson and get him to the hospital. Now I was being attacked first by Officer Kutz then another officer who [] came to assist Officer Kutz identif[ied] as Officer Ion Roth, there came to be 3rd Officer, involved in this assault on my person I believe that was an Officer Clark..." Doc. 47, Sienze Declaration, 9:12-17.[1] Sienze's

---

[1] Defendants object to Sienze's statement stating that "Plaintiff lacks personal knowledge as to the methodology, intention, and/or reasoning of Deputy Kutz and/or the other alleged Deputies involved. Plaintiff is a lay witness not qualified to opine on proper police procedure or arrest procedure. Plaintiff's statement as to the intentions of the

5

description does not contain many factual specifics. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997). "The district court can disregard a self-serving declaration that states only conclusions and not facts." Cal. Sportfishing Prot. All. v. River City Waste Recyclers, Ltd. Liab. Co., 205 F. Supp. 3d 1128, 1135 (E.D. Cal. 2016). Sienze's statements of "abuse," "assault," and "attack," while evocative, do not suggest what physical actions Officers Kutz and Roth specifically took. From the evidence presented, the court infers that Officers Kutz, Roth, and Clark physically took Sienze off his Grandson, forcefully pushed him onto the ground, and forcefully handcuffed him with his hands behind his back. Further inferences (of punching, kicking, stomping, or choking for example) can not be reasonably made.

Officer Kutz said that Sienze "resisted a little bit" the initial handcuffing. Doc. 52, Kutz Testimony, 14:3-5. In his declaration, Sienze states "I did not resist arrest nor did I resist being handcuffed nor did I ever at any time assault any officer or anyone else. The only thing [I] was doing is that I kept yelling to the Officers I'm a disabled veteran and a disabled senior citizen you are hurting me I am disabled my arms do not go behind my back you are hurting me if you need to handcuff me cuff me in the front do not put my arms behind my back you are hurting me you are hurting me cuff me in the front I am disabled cuff me in the front you are hurting me [my] arms do not go behind my back." Doc. 47, Sienze Declaration, 9:19-26. At deposition, Sienze said "I did not resist being arrested, did not resist anything other than my arms going behind my back, which they caused severe damage to both of my rotator cuffs....I resisted my arms going behind my back." Doc. 37, Sienze Deposition, 97:15-17 and 98:2. Sienze's two statements about resistance are not necessarily contradictory. Taking all inferences in Sienze's favor, the court infers that Sienze told Officers Kutz, Roth, and Clark at the time that handcuffing him with his hands behind

---

Deputies is speculative and conclusory." Doc. 59, 9:19-24. The language quoted from Sienze's declaration does not show lack of personal knowledge with regards to what happened to him. The language regarding what Officer Kutz was doing could constitute speculation on Officer Kutz's intention but could also be read as just a description of what physically happened without reference to intent. For purposes of summary judgment, the court treats it as the latter. The objection is overruled. Defendants make multiple objections to Sienze's declaration. See Doc. 59. Further citation to Sienze's declaration indicates that objections to those portions of the declaration are similarly overruled.

his back would cause him injury due to a pre-existing medical condition. Sienze did not resist except to the extent that he verbally insisted that his arms did not go behind his back. Sienze wrist suffered wrist injuries; they appeared bruised. Doc. 47, Sienze Declaration, 10:4-5; Doc. 51, Photographs 3:5, 3:6, and 3:7.[2]  At the time, Sienze was 71 or 72 years old, five feet nine inches tall, and weighed approximately 230 pounds. Doc. 37, Sienze Deposition, 5:9 and 84:8-11.

Officer Kerber arrived on the scene around this time. Doc. 36, 2:1-4. Sienze was left on the lawn for several minutes. Doc. 47, Sienze Declaration, 10:25-27. The Grandson was secured onto the gurney and moved towards the ambulance. Doc. 47, Sienze Declaration, 11:12-14. Officer Kutz approached Sienze and tried to lift him onto his feet by pulling on his injured left arm and shoulder. Doc. 47, Sienze Declaration, 11:19-21. Sienze "declined his assistance to get up as he was injuring me further. After a minute or more I regained enough strength to struggle to my feet on my own." Doc. 47, Sienze Declaration, 11:20-23. Sienze then said the handcuffs were causing him pain and asked for them to be adjusted; Defendant Kutz made the adjustment and verbally noted that Sienze's wrist had been twisted the wrong way by the handcuffing. Doc. 47, Sienze Declaration, 11:24-25. They moved to the shade of Sienze's kitchen patio. Doc. 47, Sienze Declaration, 12:9-11; Doc. 37, Sienze Deposition, 100:17-18. Sienze stayed on the patio for 15-20 minutes. Doc. 37, Sienze Deposition, 105:17-20.

Officer Kerber told Sienze that he was being arrested for "resisting, delaying, and/or obstructing a police officer in the course of their duty." Doc. 36, 2:15-16. Sienze refused to walk

---

[2] Defendants object to the photographs stating: "Lacks authentication - Evidentiary documents must be appropriately authenticated by affidavit or declaration. (Zoslaw v. MCA Distributing (9th Cir. 1982) 693F.2d 870, 883.) Plaintiff does not provide (1) a declaration or (4) a Memorandum of Points and Authorities signed under penalty of perjury authenticating these documents. This violates 28 U.S.C. § 1746, and is therefore barred from consideration in full, in opposition to Defendants' Motion for Summary Judgment. (See Sienze Dec. ¶¶ 93-96; see also Orr v. Bank of America (9th Cir. 2002) 285 F.3d 764, 774.) Irrelevant and Immaterial – The photocopies of purported photographs are not probative of, or relevant to any matter, and are therefore inadmissible. (FRE, Rules 401, 402.) Best evidence rule – Insofar as these documents are purported photocopies of photographs, the photographs themselves are required. (FRE, Rule 1002.)" Doc. 61, 4:1-20.  "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." Block v. City of L.A., 253 F.3d 410, 418-19 (9th Cir. 2001). First, Sienze has described the photographs as "Photographs of Plaintiff recorded by Madera County Sheriff Department at Madera County Jail[.] Photographs of Plaintiff showing swelling, bruising to head torso and arms taken by Plaintiff, and Plaintiff's wife, Kay Sienze" and also signed the statement "'I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct', and that this declaration was executed in Madera California." Doc. 51, at 1-2. Sienze has also submitted photographic copies that are clear enough for the relevant details to be discernable.  For summary judgment, this is sufficient for consideration.  The objection is overruled.

to the patrol car on his own. Doc. 29, Joint Fact 6. Sienze told Officer Kerber that it would require more than two people to carry him. Doc. 47, Sienze Declaration, 15:14. Sienze "advised Sgt. Kerber that I would not walk to his car when he requested, while unconstitutionally being denied my constitutional rights, and while being subjected unconstitutionally to false arrest and abuse of police power....I advised him I was under no legal obligation to comply with his orders as they were being issued unlawfully and in violation of my constitutional rights." Doc. 47, Sienze Declaration, 15:4-11. Officer Kerber called for backup; two patrol cars and an additional six police officers arrived. Doc. 37, Sienze Deposition, 107:20-24. Sienze states that "Sgt. Kerber and Deputy Kutz began trying to slam me face first down into the concrete floor of my outside kitchen patio while being handcuffed behind my back in police custody and already suffering from injuries I had no way to defend myself other than to try to use my own weight to remain standing and not have my face smashed down into the concrete below. Of the other officers totaling eight at least five or six of which piled on top of me during which time officer Kutz by his own admission reached over my shoulder pulling my left arm up over my shoulder causing excruciating pain and further injury they slam[med] me down to the concrete below....Deputy Kutz took it upon himself to further show his abusive tactics beyond all the other officers placing both of his hands over the handcuffs on my wrist and much of his body weight shoved down on said handcuffs ratcheting them closed as tightly as his weight could muster while pushing himself up off of the back my body causing tremendous pain and further damaging my writs." Doc. 47, Sienze Declaration, 15:18-26 and 16:18-23. In his deposition, Sienze stated "they grabbed me from behind and slammed me down on the concrete and proceeded to abuse me. And so I was kicking the flower pots trying to get help from inside....And by that time the other officers had all run through there and got through my patio gate and jumped on me also. Like you're out there on the football field and the quarterback is down on the ground and there's six people on top of you. There could have been six or seven. They were all on top of me abusing me, bruising me up and stuff. And as Sergeant Kutz got up or Officer Kutz, he did this, grabbed my hands with the handcuffs and goes and pushed himself up and ratcheting the cuffs closed to [the] extreme and then he does that huff again like how do you like that again, pumps his hand again." Doc. 37, Sienze Deposition, 108:3-

17. The court infers that Officers Kutz and Kerber forcefully pushed Sienze onto the ground face first, Officer Kutz grabbed Sienze by the arm or handcuffs to control him, and Sienze was physically resisting being transported to the patrol car.

Ultimately, four officers (one for each limb) were required to pick Sienze up and carry him. Doc. 29, Joint Fact 6. Officer Kutz described Sienze's resistance to being taken to the patrol car: "each of us grabbed ahold of an arm, and he began to push against me with his upper body because his hands were still behind his back. So at that time, I grabbed ahold of his left arm, and I reached across over the top of his shoulder and took him to the ground....We just held him there." Doc. 52, Kutz Testimony, 15:3-11.

At the car, the police attempted to put Sienze into the back seat, feet first. Doc. 52, Kutz Testimony, 26:3-4. Defendants provide declarations from two individuals who state that Sienze continued to resist by laying horizontal, spreading his legs, and sticking his head out to prevent the closing of the car door. Doc. 36, 2:19-22; Doc. 35, Benita Waltz Declaration, 3:25-27. In his declaration, Sienze states that "While being carried and pulled into the car flat on my back my wrists were bent back and under with the handcuffs applying great force[.] I feared my wrist would both be broken as they were bent back and up under me with the full wright of my body upon them. I attempted the best I could [by] the pressing down of my legs and my upper shoulders to relieve the weight off of my wrists as they were in terrible pain. At this time Officer Kutz proceeded to repeatedly slam[] the car door onto my head with as much body weight as he could." Doc. 47, Sienze Declaration, 17:4-10. At his deposition, Sienze agreed that he resisted being put into the car. Doc. 37, Sienze Deposition, 109:16-20. Officer Kerber states that Sienze was asked to sit upright but he refused to do so. Doc. 36, 2:23. Sienze does not recall if he was asked to sit upright. Doc. 37, Sienze Deposition, 111:11-16. In the process of forcing him into the car, Sienze states that "Officer Kutz decided to smash my head several times with the car door, which he damaged the left side of my neck pretty bad doing that....I'm already in the car and this guy is smashing my head with a car door." Doc. 37, Sienze Deposition, 110:2-17. Sienze did agree that "they rolled the window down and Officer Kutz picked up [Sienze's] head so he can get you in the car." Doc. 37, Sienze Deposition, 111:3-6. The court infers that Sienze resisted being put into the

car by stretching out his legs and head to try to prevent the closing of the car doors.  Officer Kutz forcefully hit Sienze's head several times with the car door.  For purposes of summary judgment, the court does not infer that Sienze's head was hit by accident as a side effect of trying to close the door with someone laying horizontally in the back seat.  In the end, the window of the door was rolled down to allow it to close.  Sienze suffered injuries on his head; there appears to be a scrape at the top of his head. Doc. 57, Photograph 3:17.

**C. Discussion**

The only remaining cause of action in this case is a claim of excessive force in violation of the Fourth Amendment against Officers Kutz and Kerber.  As part of the screening process, the Magistrate Judge issued a Findings and Recommendation concluding that Officers Clark, Roth, and Thomas should be dismissed from this suit. Doc. 6, F&R, 7:5-13.  Regarding Officers Kutz and Kerber, "Plaintiff's allegations are sufficient to state a claim that Deputy Kutz and Sergeant Kerber use of force against him was excessive when they tackled him and handcuffed him after he pushed Deputy Kutz. Further, Plaintiff's allegation that while placing Plaintiff in the car Deputy Kutz smashed Plaintiff's head into the side of the car several times is sufficient to state an excessive force claim." Doc. 6, F&R, 6:28 -7:4.  The Findings and Recommendation was adopted in full. Doc. 7.  Thus, Sienze's excessive force claim is limited to the actions of Officers Kutz and Kerber from the initial tackling/handcuffing through hitting his head while placing him in the patrol car.

All claims that law enforcement officers used excessive force, either deadly or non-deadly, in the course of an arrest, investigatory stop, or other seizure of a citizen are to be analyzed under the Fourth Amendment and its standard of objective reasonableness. Scott v. Harris, 550 U.S. 372, 381-83 (2007).  The pertinent question in excessive force cases is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). The objective inquiry into reasonableness is highly fact specific. Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010).  "We first assess the quantum of force used to arrest [the plaintiff]" and

then "measure the governmental interests at stake by evaluating a range of factors." Davis v. City of Las Vegas, 478 F.3d 1048, 1054 (9th Cir. 2007).  Factors that are considered in assessing the government interests at stake include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).  Further, where it is or should be apparent that an individual is emotionally or mentally unstable, that is a factor that must be considered in determining the reasonableness of the force employed. Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010).  "In some cases...the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005).  However, police officers "are not required to use the least intrusive degree of force possible" as long as the force actually used was reasonable. Forrester v. City of San Diego, 25 F.3d 804, 807 (9th Cir. 1994).  That is, a reasonable use of force "encompasses a range of conduct, and the availability of a less-intrusive alternative will not render conduct unreasonable." Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-97 (1989). "Force is excessive when it is greater than is reasonable under the circumstances." Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002).

**1. Tackling and Handcuffing**

Sienze was tackled to the ground and handcuffed with his hands behind his back even though he had told Officers Kutz, Roth, and Clark that doing so would cause him injury.  As these actions, tackling and handcuffing, appear to have taken place as one sequence without pause, they will be considered together.

Regarding the government interests, Sienze physically pushed Officer Kutz off of the

Grandson and laid on top of the Grandson to prevent access.  Sienze's continued interference delayed the transport of the Grandson to a hospital, putting the Grandson's well being at risk.  Cal. Pen. Code § 148(a) makes it a crime for a person to "resist[], delay[], or obstruct[] any public officer, peace officer, or an emergency medical technician... in the discharge or attempt to discharge any duty of his or her office or employment..."  "[O]bstructing a police officer is generally not considered a severe crime for purposes of a Fourth Amendment excessive force analysis." Huber v. Coulter, 2015 WL 13173223, *12 (C.D. Cal. 2015), citing Davis v. City of Las Vegas, 478 F.3d 1048, 1055 (9th Cir. 2007).  Additionally, Cal. Pen. Code § 242 states "A battery is any willful and unlawful use of force or violence upon the person of another."  In making an arrest, an officer "may use reasonable force to effect the arrest, to prevent escape or to overcome resistance." Cal. Pen. Code § 835a.  Thus, Officers Kutz, Roth, and Clark were permitted to use reasonable force to subdue Sienze. See Rodriguez v. City of Modesto, 2013 U.S. Dist. LEXIS 172958, *14 (E.D. Cal. Dec. 9, 2013).  Officers Kutz and Roth tackled and handcuffed Sienze to seize and arrest him.  Whether an individual poses an immediate threat to the safety of the officers or others is the most important factor in evaluating excessive force. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).  At the scene were three police officers and an elderly man laying on top of his Grandson.  Defendants have not asserted or provided any evidence to support an inference that any of the officers felt in danger from Sienze given his age and physical condition.  Given the inferences drawn at summary judgment, while Sienze initially took hostile action by pushing Officer Kutz, he was not resisting at the time Officers Kutz, Roth, and Clark were trying to handcuff him and posed no threat.  Mental instability and consideration of alternate forms of force do not appear to be factors in this situation.

In terms of quantum of force, tackling an individual can constitute excessive force in some circumstances. See Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007).  However, tackling is a low quantum of force. See Glenn v. Wash. Cty., 2010 U.S. Dist. LEXIS 61858, *36 (D. Or. June 21, 2010) (contrasting tackling with use of bean bag gun which was termed a medium, less than lethan level of force), reversed on other grounds at 2011 U.S. App. LEXIS 22300.  "It is well-established that overly tight handcuffing can constitute excessive force." Wall

v. Cty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004), citing Meredith v. Erath, 342 F.3d 1057, 1061, 1063-64 (9th Cir. 2003) and LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000); see also Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989) (putting on handcuffs in an abusive manner can constitute excessive force). The use of handcuffs to detain an individual is considered a low quantum of force. See Muehler v. Mena, 544 U.S. 93, 99 (2005) (noting that a person who was handcuffed during the execution of a search warranted suffered a "marginal intrusion."). The Ninth Circuit counsels that "The issue of tight handcuffing is usually fact-specific and is likely to turn on the credibility of the witnesses." LaLonde v. Cty. of Riverside, 204 F.3d 947, 960 (9th Cir. 2000).

Courts have long held that when police officers are dealing with an individual who has been compliant from start and inform the officers of injuries that make handcuffing with hands in the back painful, the decision to do so anyway instead of handcuffing that individual with hands in the front can constitute excessive force. See, e.g. McFarland v. City of Clovis, 2017 U.S. Dist. LEXIS 54616, *37-38 (E.D. Cal. Apr. 10, 2017); Hudson v. City of Salem, 2009 U.S. Dist. LEXIS 38511, *35 (D. Or. May 1, 2009) ("a reasonable juror could find his Fourth Amendment rights violated. Mr. Hudson informed police prior to being placed him in the police car that he suffered blood clotting problems and that having his arms handcuffed behind his back would cause him pain. His request fell on deaf ears"); Aceto v. Kachajian, 240 F. Supp. 2d 121, 124 (D. Mass. 2003) ("a routine behind-the-back handcuffing can constitute excessive force in violation of the Fourth Amendment when a non-threatening, non-flight-risk, cooperative arrestee for a minor crime (like a traffic violation) informs the police that she has an injury to her shoulder, and requests that she be handcuffed with her hands in front"); Caron v. Hester, 2001 U.S. Dist. Lexis 19382, *16-17 (D.N.H. 2001) ("crediting his claim to have specifically told Hester that he intended to fully cooperate and that he suffered from a pre-existing shoulder injury that prevented him from putting his right arm behind his back, the court cannot conclude, as a matter of law, that the force used by Hester under the described circumstances was objectively reasonable"); Ferguson v. Hall, 33 F. Supp. 2d 608, 612 (E.D. Mich. 1999) ("plaintiff's claim that Officer Hall used excessive force by handcuffing plaintiff behind his back does state a claim for the violation

of a clearly established right of which a reasonable person would have known at the time of the incident giving rise to this case"). The fact that an individual is compliant is very significant: "there is a general consensus among courts to have addressed the issue that otherwise reasonable force used in handcuffing a suspect may be unreasonable when used against a suspect whom the officer knows to be injured[;] these cases involving handcuffing uniformly concern suspects who either have visible injuries or are cooperating in their arrests." Beckles v. City of N.Y., 492 F. App'x 181, 182 (2nd Cir. 2012). An individual who was initially physically non-cooperative but who then ceases their resistance is not considered to be the same as someone compliant from the start. See Huber v. Coulter, 2015 WL 13173223, *14 (C.D. Cal. Feb. 10, 2015) ("although plaintiff was not resisting at the time of the takedown, his prior physical resistance to the officers' entry into Melnikova's apartment distinguishes his case from the usual case involving a nonresisting arrestee").

When a person resists, the analysis is quite different. In one case, the plaintiff was being held face down on the floor after physically struggling against police efforts to detain him; he told the police that he could not put his hands behind his back because he had a should injury preventing that motion and refused to bring his hands out from under his chest for handcuffing. Velkinburgh v. Wulick, 2008 U.S. Dist. LEXIS 62350, *6-7 (W.D. Wash. Aug. 14, 2008). A person under arrest may not resist handcuffing; stiffening or pulling away an arm qualifies as resistance to handcuffing. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) ("Arpin does not refute Officer Stone's report that she stiffened her arm and attempted to pull it away [during handcuffing], which was impermissible regardless of whether Officer Stone had probable cause to arrest her."); Sjogren v. City of Seaside, 2006 U.S. Dist. LEXIS 101976, *24 (D. Or. Oct. 18, 2006) ("appeared to resist the handcuffing by pulling his arm away from the office"). After the police used a Taser to compel compliance, they did handcuff the plaintiff behind is back. See Velkinburgh v. Wulick, 2008 U.S. Dist. LEXIS 62350, *11 (W.D. Wash. Aug. 14, 2008) ("Plaintiff also argues the inappropriateness of handcuffing him from the back after he told the Deputies that he had a shoulder injury"). The court pointed to plaintiff's overall physical resistance in finding that there was no excessive force used. Velkinburgh v.

1  <u>Wulick</u>, 2008 U.S. Dist. LEXIS 62350, *12-14 (W.D. Wash. Aug. 14, 2008).  Resistance versus

2  cooperation is an important factor in handcuffing cases.

3      On balance, a jury could reasonably conclude that Officer Kutz used excessive force in

4  handcuffing Sienze behind his back.  However, the extant case law distinguishes between different

5  kinds, or levels, of non-resistance.  The fact that Sienze was initially belligerent but then compliant

6  at the time of handcuffing is significant.

7      "The purpose of the qualified immunity rule is to protect from suit government officials

8  who make reasonable mistakes in the course of duty."  <u>Moore v. Lamarque</u>, 2007 U.S. App.

9  LEXIS 16163, *2 (9th Cir. 2007).  Qualified immunity covers "mistakes in judgment, whether the

10  mistake is one of fact or one of law."  <u>Kennedy v. Ridgefield City</u>, 439 F.3d 1055, 1079 (9th Cir.

11  2006), quoting <u>Butz v. Economou</u>, 438 U.S. 478, 507 (1978).  The court determines "whether the

12  right was clearly established," and applies an "objective but fact-specific inquiry."  <u>Inouye v.</u>

13  <u>Kemna</u>, 504 F.3d 705, 712 (9th Cir. 2007).  The critical question is whether "the contours of the

14  right were sufficiently clear that a reasonable official would understand that what he is doing

15  violates the right."  <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001).  Whether a right is clearly

16  established must be "undertaken in light of the specific context of the case, not as a broad general

17  proposition."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  If the officer could have reasonably, but

18  mistakenly, believed that his conduct did not violate a clearly established constitutional right, then

19  the officer will receive qualified immunity.  <u>Saucier v. Katz</u>, 533 U.S. 194, 205-206 (2001).  Given

20  the state of the case law as of the date of the incident (May 24, 2016), a police officer could

21  reasonably but mistakenly believe that Officer Kutz's actions did not violate Sienze's

22  constitutional rights.  Summary adjudication of this claim is granted in favor of Officer Kutz.

23

24  **2. Forcing Sienze to the Ground**

25      Officers Kutz and Kerber forced Sienze to the ground and pushed his face into the concrete

26  floor.  At the time, Sienze was resisting being put into a patrol car.  All other police officers have

27  been dismissed from this case; their actions are not at issue anymore.

28      In terms of government interest, Sienze does admit that he told Officer Kerber that he

15

would not cooperate; he refused to walk across the lawn and get into the patrol car.  But, he was already secured in handcuffs.  At least four police officers were present when they carried him to the car.  There was little danger to the police officers even though Sienze was resisting. If an individual is not resisting being put into a car, there is no need to use force. See <u>Gamble v. Whipple</u>, 2010 U.S. Dist. LEXIS 4793, *30 (D. Ariz. Jan. 21, 2010) ("Plaintiff was already hand-cuffed and sitting in the patrol car, and there is no assertion that Plaintiff was dangerous or posed a threat to Defendant or anyone else in the area. Nor is there any suggestion that Plaintiff was trying to escape, evade arrest, or get out of the car....it appears that there was no need for any use of force").  In this case, Sienze was actively resisting so some force was needed to put him into the car.

Again, tackling is a low quantum of force. See <u>Glenn v. Wash. Cty.</u>, 2010 U.S. Dist. LEXIS 61858, *36 (D. Or. June 21, 2010) (contrasting tackling with use of bean bag gun which was termed a medium, less than lethal level of force), reversed on other grounds at 2011 U.S. App. LEXIS 22300.  Being pushed to the ground and then being pulled onto one's feet is considered a "minimal" intrusion. See <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 652 (9th Cir. 2001) ("pushed her to the ground to handcuff her and roughly pulled her up to her feet during her arrest").  However, even this minimal level of force can constitute excessive force when used against an individual who is already handcuffed and detained. See <u>Mackovski v. City of Garden Grove</u>, 666 F. App'x 649, 653 (9th Cir. 2016) (summary judgment denied when "Mackovski's declaration asserts that Officer Bex 'jumped all over' him ***after*** he was handcuffed, at which point Mackovski no longer posed a threat." emphasis in the original).  The factual scenario presented in this case is similar to that of <u>Mackovski</u>. See <u>Mackovski v. City of Garden Grove</u>, 666 F. App'x 649, 653 (9th Cir. 2016) ("Once he was on the ground the officers handcuffed him and then 'jumped all over' him. The 'pressure and pain from when they pushed [his] arms backwards' allegedly caused him to black out").  The fact that Officer Kutz knew about Sienze's arm and wrist problems is significant. See <u>Madriz v. King City Police Dep't</u>, 2015 U.S. Dist. LEXIS 167173, at *25 (N.D. Cal. Dec. 11, 2015) ("There are factual issues concerning the reasonableness of the Monterey County Defendants' use of force in pushing Plaintiffs to the ground, stepping and

kneeling onto Mr. Madriz's back while being informed that he had back surgery and was injured, and lifting Mr. Madriz off the ground by the handcuffs"). In this circumstance, a jury could reasonably conclude that Officers Kutz and Kerber used excessive force. Fourth Amendment case law concerning excessive force and the tackling of a detained, handcuffed person was sufficiently clear at the time of the incident in question; qualified immunity is denied. Summary adjudication for this claim is denied.

### 3. Banging the Car Door Against Sienze's Head

It is undisputed that Sienze was carried by four police officers to the patrol car. He was placed into the back seat of a patrol car lying down but resisting using his legs and body. Based on the inferences drawn at summary judgment, Officer Kutz forcefully smashed a car door into Sienze's head multiple times. Sienze does not claim that Officer Kerber hit him with the door of the patrol car. The excessive force claim for this action is only against Officer Kutz. As with the earlier analysis, the government interest in using force was low. Sienze was already handcuffed and surrounded by at least four police officers; he posed no threat to anyone.

Hitting someone with a door violently can give rise to an excessive force claim. See Muanza v. City of Hercules, 2017 U.S. Dist. LEXIS 52605, *10 (N.D. Cal. Apr. 5, 2017) ("the officer violently slammed the door on Plaintiff, trapping her between the [building] door and the doorframe then causing her to fall to the ground"). But, it is considered a minor use of force. Kassab v. San Diego Police Dep't, 2009 U.S. Dist. LEXIS 135842, *19-21 (S.D. Cal. Sep. 22, 2009) ("slamming the [car] door on my left knee" considered de minimus force). Using a door to push an individual away without any special forcefulness will not ordinarily be considered excessive. See Meas v. City & Cty. of S.F., 681 F. Supp. 2d 1128, 1138 (N.D. Cal. 2010) ("the only contact between plaintiff and the car was Officer Moriyama's use of the car door to push plaintiff out of the way after plaintiff blocked the door and would not move. Under this version, this minor use of force was reasonable as a matter of law"). A similar analysis should apply to using a door to push a person into a car. Closing a door and accidentally hitting someone also does not qualify as excessive. See Gamble v. Whipple, 2010 U.S. Dist. LEXIS 4793, *30 (D. Ariz.

Jan. 21, 2010) ("if Defendant's action in shutting the car door on Plaintiff's ankle was accidental, it would not amount to excessive force").

In this case, the minor amount of force necessary to force a resisting Sienze into a patrol car is balanced against the quantum of force of hitting someone with a car door. Sienze states that Officer Kutz hit him with the door forcefully multiple times. There is no inference that the hits were accidental. Though closing a door to push or nudge a person inside a car may be permissible, the allegation is that Officer Kutz wielded the door in a forceful manner. Given that the allegation is of multiple strikes, the reasonable conclusion is that Officer Kutz meant to hit Sienze and not just to close the door. Again, striking an already handcuffed individual can be suspect. See Myles v. Cty. of San Diego, 2017 U.S. Dist. LEXIS 153439, *27 (S.D. Cal. Sep. 20, 2017) (using a baton to hit a person "handcuffed and being held by two officers over the trunk of a vehicle" could be reasonably found by a jury to constitute excessive force). In this circumstance, a jury could reasonably conclude that Officer Kutz used excessive force. Fourth Amendment case law concerning excessive force and the striking of a detained, handcuffed person was sufficiently clear at the time of the incident in question; qualified immunity is denied. Summary adjudication for this claim is denied.

### III. Leave to Amend and Motion to Dismiss

As stated before, Sienze's case was limited to an excessive force claim against Officers Kutz and Kerber. Doc. 7, Order Adopting F&R. In his Proposed Second Amended Complaint, Sienze attempts to bring Officer Roth back into this case as a defendant as well as add a number of claims, some of which were originally included in the First Amended Complaint but which were dismissed. The Scheduling Order stated that "All proposed amendments must (A) be supported by good cause pursuant to Fed. R. Civ. P. 16(a) if the amendment requires any modification to the existing schedule...and (B) establish, under Fed. R. Civ. P. 15(a), that such an amendment is not (1) prejudicial to the opposing party, (2) the product of undue delay, (3) proposed in bad faith, or (4) futile." Doc. 19, Scheduling Order, 2:24-28. Defendants oppose the request for amendment, arguing that "Plaintiff does not even attempt to make a showing of good

cause" and "most importantly, all of Plaintiff's pro[po]sed amendments are patently meritless and futile." Doc. 57, Defendants' Brief, 4:20-22 and 6:3-4. The Scheduling Order set the non-expert discovery cut-off date at June 29, 2018. Doc. 19, Scheduling Order, 3:3. Sienze did not file his proposed second amended complaint until September 7, 2018. Doc. 53, Sienze's Motion to Amend. Sienze's request to add additional parties and legal claims would require modification of the scheduling order to allow some new discovery. In the interest of efficiency, the motion to amend is treated as an implicit motion to modify the scheduling order. Thus, Sienze must show good cause for the delay in seeking amendment.

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992), citations omitted.

In this case, Sienze knew of the additional facts giving rise to his request for amendment by the date of his deposition (March 9, 2018) at the latest. See Doc. 37, Sienze Deposition, 55:6-56:10. Despite stating to Defendants that he wished to file a second amended complaint at that time, Sienze did not do so. Defendants filed a motion for summary judgment on June 27, 2018. Doc. 27, Defendants' Motion for Summary Judgment. As part of the opposition to the motion filed July 31, 2018, Sienze stated "I must ask also that this court grant an amended complaint in [] light of all foregoing discovery not previously available to plaintiff: amended complaint: to include officer Deputy Ion Roth[,] officer Deputy Matthew J Kutz[, and] officer Sgt. Daniel Kerber." Doc. 39, Sienze's Response, at 11-12. Sienze was given time to make additional filings in opposition to the motion for summary judgment. Doc. 44, Order Allowing Additional Briefing.

Sienze then formally filed a motion to amend on September 7, 2018. Doc. 53, Sienze's Motion to Amend. Despite knowing that he wanted to file an amended complaint in March, Sienze did not do so until September (or arguably July). The unexplained delay of four to six months does not demonstrate diligence.

An unpublished Ninth Circuit Case has recently found that a three month delay in seeking amendment after the discovery of new information showed a lack of diligence. Manriquez v. City of Phx., 654 F. App'x 350, 351 (9th Cir. 2016) ("A party's failure to act diligently is determinative"); see also Hernandez v. Select Portfolio Servicing, Inc., 2016 U.S. Dist. LEXIS 23296, *9 (C.D. Cal. Feb. 24, 2016) ("[T]he decision to wait approximately three more months [from when the new facts were discovered] to file this motion [to amend] is not excused by Plaintiff's counsel's workload"). "Ideally, a party will move to amend within weeks of learning new information. A longer delay can still be consistent with diligence, depending on the circumstances of the delay. Delay based on attempts to avoid 'unnecessary time and expense,' such as pursuing settlement and avoiding unnecessary motions practice, is consistent with diligence." Story v. Midland Funding LLC, 2016 U.S. Dist. LEXIS 139781, *6-7 (D. Or. Oct. 7, 2016). "During the three months between receiving new information in discovery and moving to amend, Story acted to resolve her claims without unnecessary expense or motions practice. She promptly notified Defendants of her proposed claims, prepared a demand letter Defendants requested, and engaged in protracted negotiations on settlement and stipulation." Story v. Midland Funding LLC, 2016 U.S. Dist. LEXIS 139781, *7 (D. Or. Oct. 7, 2016). In Story, the plaintiff took concrete steps to resolve the case and avoid the necessity of amending the complaint. In this case, Sienze has stated that he "attempted to arrive at an out-of-court settlement with defense counsel on a previous meeting" but no agreement was reached. Doc. 39, Sienze's Response, at 13. The court minutes associated with a canceled settlement conference set for August 15, 2018, reflect that "Parties advised the court as to previous negotiation attempts. Parties do not believe it would be fruitful to reset the settlement conference." Doc. 45. There is no indication that Plaintiff took part in extensive settlement negotiations or otherwise used the months after the deposition to resolve the case. To be clear, informing the opposing party of the probability of amendment is by

itself insufficient. See <u>City of Lincoln v. United States</u>, 2018 U.S. Dist. LEXIS 139251, *16 (E.D. Cal. Aug. 15, 2018) ("the City's counsel admits in a declaration that '[t]he City informed the County, at least as early as January of 2017, that it possessed some limited information that the County or its residents contributed wastes to the [Dump], and that pending further investigation and discovery, it may be seeking to bring the County into the action.' This filing shows the City had at least some information about the County or County residents contributing waste to the Dump and was expressly considering adding the County to this suit approximately eight months before filing the instant motion. This approximately eight-month delay exposes the City's lack of diligence in seeking leave to amend."). Additionally, failing to seek substitution of a proper defendant also demonstrates a lack of diligence. See <u>Johnson v. Mammoth Recreations</u>, 975 F.2d 604, 609-10 (9th Cir. 1992). Sienze has not demonstrated that he has acted with appropriate diligence in seeking amendment of his complaint.

Assuming arguendo that Sienze had met the good cause standard, the claims he seeks to add appear to be futile. "A motion for leave to amend may be denied if it appears to be futile or legally insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." <u>Miller v. Rykoff-Sexton, Inc.</u>, 845 F.2d 209, 214 (9th Cir. 1988), citations omitted.

First, Sienze attempts to raise a Fourth and Fourteenth Amendment excessive force claim against Officer Roth. This is a claim that was included in the First Amended Complaint and was dismissed for failing to adequately state a claim. Sienze states "Ofc. Ion Roth and Officer Matthew J Kutz further used excessive force on plaintiff causing grievous bodily harm to be suffered by plaintiff which is continuing today." Doc. 53, Sienze's Motion to Amend, at 1. He has provided elaboration that "Ofc. Ion Roth did under color of law illegally and unlawfully put handcuffs on to plaintiff in an outward facing position squeezed them tight and then use[d] the handcuffs to twist plaintiff's wrist and forearm so as to cause excruciating pain and long-term damage to the wrist and radius bone." Doc. 53, Sienze's Motion to Amend, at 3. Given that Officer Kutz is being granted qualified immunity for the initial tackling and handcuffing, any attempt to make the same claim against Officer Roth must also fail for the same reason.

Second, Sienze attempts to raise a Fifth Amendment deprivation of liberty interest without due process claim on behalf of his Grandson against Officer Kutz.  This is a claim that was included in the First Amended Complaint and which has already been dismissed.  Sienze states "grandson was being strangled by officer Kutz using lethal force on grandson offering no physical resistance, while handcuffed in custody on a gurney face down, and in need of emergency medical attention." Doc. 53, Sienze's Motion to Amend, at 2.  As explained to Sienze in prior court orders, he does not have standing to assert his Grandson's constitutional claims. Doc. 6, F&R, 10:14-11:10.  In particular, Sienze has not explained how his Grandson can not assert legal rights on his own behalf.  Given the prior history of Sienze's pleadings, his deprivation of liberty interest without due process claim on behalf of his Grandson is futile.

Third, Sienze attempts to assert a Ninth Amendment right to defend Grandson's claim against Officer Kutz.  The First Amended Complaint included a claim asserting a right to defend his Grandson that did not mention the Ninth Amendment.  That claim was dismissed.  "[T]he ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." Strandberg v. Helena, 791 F.2d 744, 748 (9th Cir. 1986); accord Mont. Caregivers Ass'n, LLC v. United States, 526 F. App'x 756, 758 (9th Cir. 2013).  Apart from the Ninth Amendment, as explained in prior court orders, there is no recognized constitutional right to defend another. Doc. 6, F&R, 10:1-13.

Fourth, Sienze attempts to assert a Fourteenth Amendment right to have the police implement a citizen's arrest on his direction against Officers Kutz and Kerber.  This is a claim that was included in the First Amended Complaint and which has already been dismissed.  As explained in prior orders, there is no deprivation of a liberty interest when police refuse to arrest a person when directed to do so by a citizen. Doc. 6, F&R, 8:3-9:26.

Fifth, Sienze attempts to assert a conspiracy to commit constitutional violations claim against Officers Kerber and Roth.  He states "Madera County Sheriff Deputy Ion Roth took it upon  himself to radio call Sgt. Daniel Kerber [] they then both conspired to injure or harm plaintiff and  further deprive plaintiff of his constitutional rights all under color of law. This act of conspiracy is noted on a transcript of CD2 in plaintiff's list of evidence page 28 and 29 of the

transcripts." Doc. 53, Sienze's Motion to Amend, at 4. The referenced conversation goes:

> Deputy Roth: - You're probably going to want to 148 him?
> Sgt. Kerber: - Yeah right.
> Deputy Roth: He's something of a site searcher. Do we have anybody or someone to write him a GPA-like Constitution like kind of thing.
> Sgt. Kerber: - Gotcha.
> Deputy Roth: - You'll want to address the thing.
> Sgt. Kerber: - Okay.
> ....
> Deputy Roth: - Alright don't write this down. We don't want to put other people's heads in the sling.
> Sgt. Kerber – Okay – alright, thanks bye.

Doc. 50, at 28-29. Sienze does not explain how this conversation affects his constitutional rights.

Sienze has not demonstrated good cause to justify modifying the scheduling in this case. Thus, his motion for leave to amend must be denied. Additionally, the claims he seeks to add appear to be futile.

## IV. Order

Sienze's motion for leave to amend is DENIED. Defendants' motion to dismiss is GRANTED.

Summary adjudication is GRANTED in favor of Officer Kutz for the excessive force claim based on the initial tackling and handcuffing.

Summary adjudication regarding the excessive force claim based on Officers Kutz's and Kerber's tackling Sienze on the patio and Officer Kutz's hitting Sienze's head with a car door are DENIED.

The parties are ordered to file a joint pretrial statement in preparation for the pretrial conference.

IT IS SO ORDERED.

Dated:   January 3, 2019                    _____
                                            SENIOR  DISTRICT  JUDGE